**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| Tango Marine S.A., § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION _____ |
| v. § | |
| § | IN ADMIRALTY, Rule 9(h) |
| Elephant Group Limited § | |
| § | |
| Elephant Group PLC, § | |
| § | |
| Defendants, § | |
| § | |
| and § | |
| § | |
| Heritage Agro-Allied Foods Inc. § | |
| § | |
| Heritage Agro-Allied (H2A) Foods Nigeria § | |
| Limited § | |
| § | |
| Shine Bridge Global Incorporated, § | |
| § | |
| Garnishees. § | |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
AUTHORIZING ISSUE OF PROCESS OF MARITIME
<u>ATTACHMENT AND GARNISHMENT</u>**

Plaintiff Tango Marine S.A. ("Tango Marine") moves, pursuant to Supplemental Rule B, for an Order directing the Clerk to issue Supplemental Rule B Process of Maritime Attachment and Garnishment ("Writ") to the named Garnishees and providing further that the Clerk may issue additional writs on application of Tango Marine.

Plaintiff Tango Marine's Verified Complaint confirms as follows.

1) An *in personam* claim against Elephant Group which is cognizable in admiralty;

2) Elephant Group cannot be found in this District;

  3)  Property belonging to defendant Elephant Group is present or will soon be present in the district; and

  4)  There is no statutory or general maritime law prohibition to the attachment.

As this Court has ordered in other similar cases,[1] therefore should order the issue of the requested writs of maritime attachment and garnishment, as Tango Marine further sets out herein.  *Accord*, *Swissmarine Service S.A. v. XCoal Energy and Resources*, No. 1:19-CV-1143-

---

[1] *Pan Ocean Co., Ltd. V. Clearlake Shipping Pte Ltd.*, Civil Action No. 3:18cv1152, filed 05/07/2018, Order to Issue Writ of Maritime Garnishment and Attachment (Kinkeade, Jr., J.) https://ecf.txnd.uscourts.gov/cgi-bin/DktRpt.pl?779499339487682-L_1_0-1

 *Chemoil Middle East Dmcc V. Gulf Marine Management S.A. Et al*, Civil Action No. 3:14cv2300, filed 06/25/2014, Order to Issue Writ of Maritime Garnishment and Attachment, July 8, 2014 (Godbey, Jr., J. ),  https://ecf.txnd.uscourts.gov/doc1/17718292803

 *Agrocooperative Ltd v. Sonangol Shipping Angola (Luanda) Limitada Et al*, Civil Action No. 3:14cv2254, filed 06/20/2014, Order to Issue Writ of Maritime Garnishment and Attachment, June 25, 2014 (Boyle, J.),  https://ecf.txnd.uscourts.gov/doc1/17718262073

 *Fratelli Cosulich Bunkers (Hk) Limited Et Al V. Stx Corporation Et al*, Civil Action No. 3:13cv2753, filed 07/16/2013, Order to Issue Writ of Maritime Garnishment and Attachment July 16, 2013 (Boyle, J.), https://ecf.txnd.uscourts.gov/doc1/17717489980

 *CMA-CGM V. Lonestar Foxhall Llc Et al*, Civil Action No.  3:11cv3444, filed 12/12/2011, Order to Issue Writ of Maritime Garnishment and Attachment, 12/29/2011 (Fish, J.), https://ecf.txnd.uscourts.gov/cgi-bin/DktRpt.pl?584080883575136-L_1_0-1

 *Walls Industries Inc V. Shanghai Jumpo Industry Et al*, Civil Action No.3:11cv2085, filed 08/22/2011, Order to Issue Writ of Maritime Garnishment and Attachment,   8/24/2011 (Solis J.),  https://ecf.txnd.uscourts.gov/doc1/17715939240

 *Ermis Management Co v. Durward Marine LLC, et al*, Civil Action No. 3:00cv1607, filed 07/25/2000, Order to Issue Writ of Maritime Garnishment and Attachment, 7/26/2000 (Fitzwater, C.J.),  https://ecf.txnd.uscourts.gov/doc1/1771421656 11

 *Indus Maritime v. Wall Machinery Inc.*, Civil Action No. 3:97cv2979, filed 12/08/1997, Order to Issue Writ of Maritime Garnishment and Attachment, 12/18/1997 (Solis, J. ) https://ecf.txnd.uscourts.gov/cgi-bin/DktRpt.pl?380791990205728-L_1_0-1

RP (U.S. District Court, W.D. Texas, Austin Div., Pittman, J., Order (including opinion), October 27, 2019, Exhibit A hereto).

> Supplemental Rule B(a) provides as follows:
>
>> If a defendant is not found within the district, when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property - up to the amount sued for - in the hands of garnishees named in the process.

See also 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21:3 (6th ed. Nov. 2019 update). "Neither Rule B nor any other of the Supplemental Rules create "a valid prima facie admiralty claim." Rather, the Supplemental Rules fashion procedures by which a valid maritime claim may form the basis for a writ of maritime attachment." *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007).

The standard of proof to which Rule B subjects a plaintiff seeking maritime attachment is permissive in the initial pleading stage as plaintiff need not prove its claim by a preponderance of the evidence, or to a similar standard, but rather present sworn factual assertions satisfying the four prerequisites.

Tango Marine has filed a Verified Complaint seeking process to attach and garnish, pursuant to Supplemental Rule B, the property of Elephant Group Limited and Elephant Group PLC found in this District, namely accounts payable. The Verified Complaint This Court should now, on Plaintiff's Verified Complaint, and as Supplemental Rules B provides, grant Tango Marine's motion directing the Clerk to issue the Supplemental Rule B Writs.

### The Writs Seek Property Held by the Named Garnishees in this District

> Specifically, Rule B notes that process of attachment can reach all of "the Defendant's tangible or intangible personal property" and courts have construed this language expansively to recognize a variety of attachable

> interests -- including funds in a bank account, escrow in the court registry, debts owed to a defendant, and an arbitration award in Defendant's favor.

*Consub Del. L.L.C. v. Schahin Eugenharia Limitada*, 676 F. Supp. 2d 162, 167 (S.D.N.Y. 2009) (footnotes omitted, emphasis added). "The Rule's use of the possessive form - "defendant's" - makes ownership of the assets a criterion of their attachability. Rule B does not require that a defendant, in addition to ownership, have full control over its goods, chattels, credits or effects." *Starboard Venture Shipping v. Casinomar Transp.*, 1993 U.S. Dist. LEXIS 15891, *9 (S.D.N.Y. Nov. 9, 1993).

> Rule B(1) . . . provides that a maritime Plaintiff may 'attach the Defendant's tangible or intangible personal property.' It is difficult to imagine words more broadly inclusive than 'tangible or intangible.'" *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 276 (2d Cir. 2002) (citation omitted). Given the breadth of Rule B, it is recognized that the Rule permits a Plaintiff to attach, for example, "debts owed to the Defendant . . . even if they have not yet matured or have only partially matured," provided that "the Defendant's entitlement to the credit or interest in the debt [is] clear." Id. (*quoting* Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 J. Mar. L. & Com. 521, 530 (Oct. 1989)). Accordingly, it has been held that where a transfer of funds between two third-parties is shown to have been made for the benefit of a Defendant subject to an order of attachment, the Defendant's "property interest in" the transfer may be "sufficient to render it attachable under Rule B." *Essar Int'l, Ltd. v. Martrade Gulf Logistics*, FZCO, No. 07 Civ. 3439 (WHP), 2007 U.S. Dist. LEXIS 61713, 2007 WL 2456629, at *2 (S.D.N.Y. Aug. 23, 2007).

*Novoship (UK) Ltd. v. Ruperti*, 567 F. Supp. 2d 501, 505 (S.D.N.Y. 2008).

Tango Marine has, in its Verified Complaint, set out enough facts to state a claim to relief that is plausible on its face and that named Garnishees hold property of Elephant Group Limited and/or Elephant Group PLC within the meaning of Supplemental Rule B. The proposed Writs filed herewith name entities that, on information and belief, do business with Elephant Group Limited and/or Elephant Group PLC. The proposed Order, submitted herewith, limits garnishments "to the amount sued for," as required by Supplemental Rule B.

Tango Marine's Verified Complaint sets out the factual "bases for its belief that [D]efendant's property may be found within this District, as well as the garnishees it seeks authorization to serve." *Wight Shipping, Ltd. v. Societe Anonyme Marocaine de L'Industrie Du Raffinage S.A.*, 2008 U.S. Dist. LEXIS 106420, *7 (S.D.N.Y. Nov. 24, 2008) (considering pleading requirements for "property held by garnishee" under Rule B).  "At the pleading stage, no obligation exists to prove anything, only to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Capitol Records, Inc. v. City Hall Records, Inc.*, 2008 U.S. Dist. LEXIS 55300, *21–22 (S.D.N.Y. July 18, 2008) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007)).  Plaintiff's allegations

> demonstrate a "plausible" entitlement to a maritime attachment" because they "at least show that it is plausible to believe that Defendant's property will be "in the hands of" garnishees in [this District] at the time the requested writ of attachment is served or during the time that service is effected.

*Peninsula Petroleum Ltd. v. New Econ Line Pte Ltd.*, 2009 U.S. Dist. LEXIS 24470, *5 (S.D.N.Y. Mar. 17, 2009).

This Court therefore should enter the proposed Order, providing for the Clerk to issue the requested Writs, because Tango Marine's Verified Complaint alleges facts that make it plausible to believe that: "(1) it has a valid *prima facie* admiralty claim against the [D]efendants; (2) the Defendants cannot be found within the district; (3) the [D]efendants' property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006); *Peninsula Petroleum*, 2009 U.S. Dist. LEXIS 24470 at *2–3 (Plaintiff in maritime case must at least meet pleading standard of Federal Rules of Civil Procedure, "which require[s] a Plaintiff to . . . allege 'enough facts to state a claim to relief that is plausible on its face'" (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

> *Twombly* is based on the principles that (1) a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 678-680. Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id*. at 679. Accordingly, under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*.
>
> Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged).

*United States v. $33,984.00 in United States Currency*, 2012 U.S. Dist. LEXIS 83119, *4–5 (D. Neb. June 14, 2012).

Tango Marine seeks attachment of Elephant Group Limited's and Elephant Group PLC's property, as defined in the Verified Complaint, including but not limited to accounts payable due to Elephant Group Limited and/or Elephant Group PLC from the Garnishees and any other funds/property maintained by the Garnishees for the benefit of Elephant Group Limited and/or Elephant Group PLC.

/

[Continued on Next Page]

/

WHEREFORE, for the reasons stated herein, Tango Marine respectfully requests that the Court grant the instant Motion and direct the Clerk to issue the Writs requested. Tango Marine herewith submits a draft order.

                    Respectfully Submitted,

                    */s/ Scott R. Wiehle*
                    Scott R. Wiehle
                    State Bar No. 24043991
                    scott.wiehle@kellyhart.com
                    Emily R. Steppick
                    emily.steppick@kellyhart.com
                    State Bar No. 24117095

                    J. Stephen Simms
                    (*pro hac vice* motion pending)
                    jssimms@simmsshowers.com
                    Simms Showers LLP
                    201 International Circle, Suite 250
                    Baltimore, Maryland 21030
                    Telephone: (410) 783-5795
                    Facsimile: (410) 510-1789

                    Attorneys for Tango Marine S.A.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SWISSMARINE SERVICES, S.A., | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:19-CV-1143-RP |
| XCOAL ENERGY AND RESOURCES, | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Plaintiff Swissmarine Services, SA's ("Swissmarine") Verified Complaint with Request for Issue of Process of Maritime Attachment and Garnishment. (Dkt. 1). For the reasons discussed below, the Court grants Swissmarine's request to issue writs of maritime attachment and garnishment to PNC Bank, National Association and Glencore Ltd. (collectively, "Garnishees"), and orders that a process server for those writs is appointed.

**I. BACKGROUND**

Swissmarine alleges the following facts in its complaint. (Dkt. 1). Swissmarine, a Swiss corporation, charters bulk carrier vessels. (*Id.* at 2). Defendant XCoal Energy and Resources ("XCoal"), an American corporation, chartered Swissmarine vessels "to transport coal from various ports throughout the world, including in the United States, to XCoal's customers." (*Id.*). Their contracts "required that XCoal pay charter hire and for demurrage and other expenses associated" with chartering the vessels. (*Id.*). According to Swissmarine, XCoal "failed and refused" to pay a total of $1,359.833.27. (*Id.* at 3).

Now, Swissmarine "demands security for arbitration proceedings, proceeding in the United States." (*Id.* at 1). It seeks $1,631,799.92, 125% of the amount it claims XCoal owes ($1,359,833.27), as that security. (*Id.* at 3). It asks the Court to issue writs of attachment and garnishment up to that

1

**Exhibit A**

sum to Garnishees, that "are entities with offices or agents located in this District which . . . Swissmarine reasonably believes hold accounts which are the property of and/or owing to XCoal." (*Id.* at 2, 4). Swissmarine then asks for "this action to be stayed and the amount to await final award in the Arbitration and judgment entered on such award by this Court." (*Id.* at 4).

Relatedly, Swissmarine also requests that the Court appoint a process server to serve the writs on Garnishees. (*Id.* at 4; Dkt. 7).

## II. LEGAL STANDARD

Supplemental Admiralty and Maritime Claims Rule B(1)[1] "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)). The purposes of this power are "to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Id.* (quoting *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950)). "A Rule B maritime attachment is a remedy available only under a court's admiralty jurisdiction." *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 186 (5th Cir. 2010) (citing Fed. R. Civ. P. 9(h); Fed. R. Civ. P. Supp. R. A(1)(A)). So, "[i]f the underlying dispute or claim does not fall within admiralty jurisdiction, the court lacks the authority to issue the Rule B attachment." *Id.*

"Neither Rule B nor any other of the Supplemental Rules create[s] 'a valid prima facie admiralty claim.'" *Id.* (quoting *Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007)). "Rather, the Supplemental Rules fashion procedures by which a valid

---

[1] "If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process." Fed. R. Civ. P. Supp. R. B(1)(a).

2

maritime claim may form the basis for a writ of maritime attachment." *Id.* (quoting *Sonito Shipping*, 478 F. Supp. 2d at 536).

Generally, a party seeking a writ of maritime attachment and garnishment must show "four prerequisites":

> (1) an *in personam* claim against the defendant which is cognizable in admiralty;
> (2) the defendant cannot be found within the district in which the action is commenced;
> (3) property belonging to the defendant is present or will soon be present in the district; and
> (4) there is no statutory or general maritime law prohibition to the attachment.

2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21:3 (6th ed. Nov. 2019 update) (citing *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008)). After review of the plaintiff's complaint and affidavit, "if the conditions of this Rule B appear to exist," the court must "enter an order so stating and authorizing process of attachment and garnishment." Fed. R. Civ. P. Supp. R. B(1)(b); *see also Heidmar, Inc. v Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 267 (5th Cir. 1998). The standard of proof to which Rule B subjects an attachment-seeking plaintiff is thus permissive: at this stage, it need not prove its claims by a preponderance of the evidence or to a similar standard, but rather present sworn factual assertions satisfying the four prerequisites. *Compare, e.g.*, *Jensen v. Rollinger*, No. SA:13-CV-1095-DAE (W.D. Tex. filed Dec. 10, 2013) (Order, Dkt. 3, at 5) (presenting plaintiff's allegations and "determining the conditions of Rule B appear[ed] to exist[]"), *with* 2 Schoenbaum, *supra*, at § 21:3 (for contesting Rule B attachment, "[t]he standard of proof is 'preponderance of the evidence'"). Even so, "[t]he facts must be plausible on their face, and the identification of the attached or garnished property should be clearly and unequivocally stated." 2 Schoenbaum, *supra*, at § 21:3.

### III.  ANALYSIS

#### 1.  *In Personam* Claim Cognizable in Admiralty

The question of whether a plaintiff has asserted an *in personam* claim cognizable in admiralty is largely a "jurisdictional one": the Court asks if "minimum contacts" exist. 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21:3 (6th ed. Nov. 2019 update) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). In other words, is the defendant's "activity within the district at the time of [the plaintiff's] injury" sufficient to establish jurisdiction? *LaBanca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. Unit B 1981). However, this issue is not dispositive: "the remedy of maritime attachment is constitutionally sound and provides a jurisdictional basis for an action in admiralty despite the absence of minimum contacts." 2 Schoenbaum, *supra*, at § 21:3 (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1090 (N.D. Cal. 2002)). The Court also must ensure that the plaintiff's claims "sound in admiralty" by "look[ing] to whether the 'principal objective' of the claimed contract or dealings is 'maritime commerce.'" *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (quoting *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 25 (2004)).

Here, Swissmarine does not allege specific facts pointing to XCoal's (as opposed to Garnishees') minimum contacts with the Western District of Texas. (Compl., Dkt. 1). But "[u]nder the attachment rules, whether [the defendant] has ever been physically present or domiciled in the forum state is immaterial." *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1090 (N.D. Cal. 2002). And Swissmarine alleges many facts satisfying the requirement that its claims primarily concern maritime commerce. (*See* Compl., Dkt. 1, at 2–3). Thus, the Court finds that this condition appears to exist.

### 2. Defendant Cannot Be Found in this District

"The second and more crucial inquiry is whether the defendant is present within the district for service of process." 2 Schoenbaum, *supra*, at § 21:3. "[T]he determination of whether the defendant can be found within the district must be made before attachment is ordered." *Heidmar, Inc. v Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 267–68 (5th Cir. 1998). If the defendant is in fact present at the time the plaintiff files for the attachment, attachment is invalid.

According to Swissmarine's complaint and affidavit, XCoal "cannot be found in this District within the meaning of Supplemental Rule B." (Compl., Dkt. 1, at 2, 6). Consequently, this condition appears to exist, warranting attachment. *See Heidmar*, 132 F.3d at 267.

### 3. Property Belonging to Defendant

Rule B authorizes attachment of "the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process," Fed. R. Civ. P. Supp. R. B(1)(a), so long as it is "within the territorial reach of the district court," 2 Schoenbaum, *supra*, at § 21:3. "The property attached need not have any relationship with the claim sued upon but the defendant must have an interest in the property involved," and "[a]ny right or title to property will be sufficient." *Id.* (citing *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016)).

Here, Swissmarine alleges that it believes XCoal has, "or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of" Garnishees. (Compl., Dkt. 1, at 3–4). Therefore, this condition appears to exist, justifying attachment.

However, Rule B caps the value of the property to be attached at "the amount sued for," Fed. R. Civ. P. Supp. R. B(1)(a)—that is, "up to the amount for which the plaintiff has a valid prima facie claim." *Peter Döhle Schiffahrts KG v. Sesa Goa Ltd.*, 642 F. Supp. 2d 216, 221 (S.D.N.Y. 2009); *see*

also *E. Asiatic Co. v. Indomar, Ltd.*, 422 F. Supp. 1335, 1341 (S.D.N.Y. 1976) (discussing this limitation and reducing a judgment to "the extent of the property subjected to the process of maritime attachment"). Swissmarine provides no information concerning its request for an additional 25% of what XCoal allegedly owes it ($271,966.65) as additional security. (*See* Compl., Dkt. 1, at 3). Typically, though, courts allow attachment amounts that exceed the actual damages claimed when the plaintiff alleges the difference is necessary to cover expenses like interest, costs, and attorney's fees. *See, e.g.*, *Castleton Commodities Shipping Co. PTE Ltd v. HSL Shipping & Logistics NA, Inc.*, No. CV 16-6619, 2016 WL 5231844, at *1 (E.D. La. Sept. 22, 2016); *Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co.*, No. CA C-12-074, 2013 WL 1867604, at *1 (S.D. Tex. Apr. 22, 2013). Applying the generally deferential Rule B standard of proof, the Court presumes that the additional 25% is included in "the amount sued for." Fed. R. Civ. P. Supp. R. B(1)(a).

4. No Maritime Law Prohibition

Finally, the Court determines if any statutory or general prohibition exists in maritime law that would bar attachment and garnishment. 2 Schoenbaum, *supra*, at § 21:3. Swissmarine does not note any, and the Court is unaware of any, so at this stage, the "no prohibition" condition appears to exist.

IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that process of maritime attachment be issued to garnish and attach XCoal's property, held by Garnishees PNC Bank, National Association and Glencore Ltd., in the amount of **$1,631,799.92**, as security for Swissmarine's claims asserted in the parallel arbitration proceedings. (*See* Compl., Dkt. 1, at 4).

**IT IS FURTHER ORDERED** that Michael J. Smith (counsel of record for Swissmarine) or any other person appointed by him who is at least 18 years old and not a party to this action, is appointed to serve process of maritime attachment and garnishment, along with a copy of

Swissmarine's complaint, (Dkt. 1), and a copy of this order. (*See* Dkt. 7). *See* Fed. R. Civ. P. Supp. R. B(1)(d)(ii); Fed. R. Civ. P. 4(c).

**IT IS FINALLY ORDERED** that this action is **STAYED** pending the decision of the arbitrator in the parallel arbitration proceedings. Within **fourteen days** of the arbitrator's decision, Swissmarine shall apprise the Court of that decision and how it affects the proceedings in this case. However, if XCoal wishes to contest the Rule B attachment, this stay shall not preclude it from doing so and receiving a "a prompt hearing at which [Swissmarine] shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f).

**SIGNED** on November 27, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE