IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Tango Marine S.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO: 20-cv-42-A |
| v. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Elephant Group Limited, et al., | § | |
| | § | |
| Defendants and Garnishees. | § | |

## PLAINTIFF'S VERIFIED MOTION FOR ALTERNATIVE SERVICE

Plaintiff Tango Marine S.A. ("Tango") responds to this Court's April 16, 2020 Order, [1] with this *Motion for Alternative Service* (the "Motion") on Defendants Elephant Group Limited and Elephant Group PLC (collectively, "Elephant Group" or "Defendants") pursuant to Federal Rule of Civil Procedure 4(f)(3), and in support thereof states:

### I.   BACKGROUND

This is an action for breach of maritime contract.  In 2016, Tango owned the M/T TEAM TANGO, an ocean-going vessel (the "Vessel"), and entered into a charter party with Elephant Group for the Vessel.  On July 18, 2016, the Vessel arrived in Lagos, Nigeria with a cargo of prilled urea (the "Cargo") owned by Elephant Group.  Elephant Group failed to secure the licenses required by the Nigerian government before the Cargo could be unloaded.  As a result, the Vessel was detained, and Nigeria port authorities denied discharge of the Cargo.

---

[1] This Court on April 16, 2020 ordered as follows:

The court ORDERS that by 4:00p.m. on May 4, 2020, plaintiff, Tango Marine S.A., file either proof of proper service of summons and complaint on defendants, or an instrument containing an explanation, in affidavit form, as to why it has not yet served the summons and complaint on defendants, what steps plaintiff has taken to attempt service, what steps plaintiff anticipates making in the future, and how long plaintiff anticipates service of process will take.

While the Vessel was detained from July 18, 2016 to January 10, 2019, Tango incurred demurrage charges of at least USD 1,000,000 in addition to at least USD 200,000 it spent in supplies and maintenance. These costs stem from Elephant Group's breach of contract and, therefore, Elephant Group is liable to Tango for damages in at least that amount. Such damages exclude the lost profits Tango suffered during the time it was unable to charter the Vessel, as well as significant legal expenses it incurred in bringing this suit.

Tango seeks a judgment against Elephant Group in the amount of USD 1,200,000.00. In furtherance of its ability to recover its damages, Tango also sought the issuance of process of maritime attachment and garnishment in security for its claims. Defendants are Nigerian companies and may be found at the same address in Nigeria. [APP. 001–02, ¶ 2]. Nigeria is neither a party to the Hague Convention, nor is it bound by the Inter-American Convention on Letters Rogatory and Additional Protocol. [APP. 003–04, ¶¶ 8–9].

On January 22, 2020, Tango mailed the Summonses and Verified Complaint to Defendants by International Registered Mail, return receipt requested. [APP. 002, ¶ 3, APP. 006–07, Ex. A]. Tango tracked its first unsuccessful attempt to deliver the envelopes to Defendants on February 29, 2020. [APP. 002, ¶ 4; APP. 008–11, Ex. B]. A second unsuccessful attempt was made on March 2, 2020. [APP. 002, ¶ 4; APP. 012–13, Ex. B].

In an abundance of caution, on March 11, 2020, Tango mailed a second set of Summonses and Verified Complaint to Defendants by International Registered Mail, return receipt requested. [APP. 002, ¶ 5; APP. 014–15, Ex. C]. As of March 21, 2020, the envelopes were in transit to their destination, but no additional information is available. [APP. 002, ¶ 6; APP. 016–18, Ex. D].

Despite the fact that on two separate occasions, Tango mailed the summonses to Defendants by International Registered Mail, postage prepaid, return receipt requested, Tango

PLAINTIFF'S VERIFIED MOTION FOR ALTERNATIVE SERVICE                                    PAGE - 2 -

does not believe it will achieve service.  [APP. 003, ¶ 7].  In that case, Tango would have to pursue a Letter of Request, a formal process that can take months.  [APP. 003, ¶ 8].  This will delay Tango's ability to recoup its damages while it incurs additional costs.  [APP. 003, ¶ 8].  Further, the informal service methods set out by the U.S. State Department—by mail, agent, or local attorney—are complex, and a process server and local attorney have rejected Tango's requests for assistance.[2]  [APP. 004, ¶¶ 9–10].

## II.    LEGAL STANDARD FOR SUBSTITUTED SERVICE

Tango's unsuccessful attempts at service have left it with no choice but to file this Motion for Alternative Service.  Specifically, Tango seeks this Court's authorization to attempt service via e-mail, and, in the event that e-mail is unsuccessful, through Federal Express mail.

### A.  Alternative service must provide Defendants with notice of this suit in a manner that is consistent with due process, as well as applicable international law.

Federal Rule of Civil Procedure 4(f) authorizes substituted service in a foreign country in any manner that is consistent with due process requirements and proper under international law. FED. R. CIV. P. 4(f).  Due process requires that such method be "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1945).

A plaintiff need not attempt every permissible means of service before it may petition the court for alternative relief.  *See Rio Props., Inc., v. Rio Int'l Interlink*, 284 F.3d 1007, 1015–16 (9th Cir. 2002).  Rather, the facts and circumstances of the case must suggest that judicial intervention is required.  *Id.* at 1016.  For instance, in *Rio Props., Inc., v. Rio Int'l Interlink*, the

---

[2] The website for the U.S. Department of State—Bureau of Consular Affairs states that "[i]n the absence of any prohibition against it, service of process in Nigeria may be effected by mail, by agent, such as a local attorney, or through letters rogatory." *Travel.State.Gov*, U.S. DEPARTMENT OF STATE—BUREAU OF CONSULAR AFFAIRS, at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Nigeria.html.

Court reviewed the sufficiency of service of process in a foreign country that was neither a party to the Hague Convention, nor bound by any other treaty on service of process. *Id.* In its review, the Court examined the language and structure of Rule 4(f), as well as the accompanying advisory committee notes, which the Court found to bolster its analysis, stating:

> Beyond stating that service ordered under Rule 4(f)(3) must comport with constitutional notions of due process and must not be prohibited by international agreement, the advisory notes indicate the availability of alternate service of process under Rule 4(f)(3) without first attempting service by other means. Specifically, the advisory notes suggest that in cases of "urgency," Rule 4(f)(3) may allow the district court to order a "special method of service," even if other methods of service remain incomplete or unattempted.

*Rio Props.*, 284 F.3d at 1015.

Thus, the court explained that alternative service of process under Rule 4(f)(3) is neither a "last resort," nor "extraordinary relief." *Id.* "It is merely one means among several which enables service of process on an international defendant." *Id.* The Court held that "Rule 4(f)(3) is an equal means of effecting service of process," which is limited only by the terms of international treaties. *Id.* at 1016; *Prediction Co. LLC v. Rajgarhia*, No. 09-7459, 2010 WL 1050307, at *1 (S.D. N.Y. Mar. 22, 2010) ("The only limitations on Rule 4(f)(3) are that the means of service must be directed by the court and must not be prohibited by international agreement.").

B.  Service may be accomplished through e-mail or Federal Express mail.

This Court has discretion to authorize service through e-mail and Federal Express mail, and the circumstances suggest that such methods are permissible under international law, and reasonably calculated to notify Defendants of this suit. In granting a party's motion for alternative service, trial courts have discretion to permit a variety of methods of service, including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and e-mail. *Rio Props.*, 284 F.3d at 1016; *see also In re Int'l*

*Telemedia Assocs.*, 245 B.R. 713, 716 (Bankr. N.D. Ga. 2000) (authorizing the plaintiff to serve the defendant via facsimile transmission, electronic mail, and mail to defendant's last known address). Thus, a particular method of service is proper, so long as the method authorized satisfies due process requirements and is consistent with the operative international laws. *Id.*

Service via e-mail or Federal Express satisfies this standard. *Ryan v. Brunswick Corp*., No. 02-CV-0133E, 2002 U.S. Dist. LEXIS 13837, *2 (W.D. N.Y. May 31, 2002) (granting service via e-mail and other alternative methods). In *Ryan v. Brunswick Corp*., the defendant was located in Taiwan, a country that is not a party to the Hague Convention or any other treaty governing service of process. *See id.* at *1. There, the court's reasoning focused on the fact that the defendant conducted business online, communicating through e-mail. *See id.* at *3. The court concluded that service is certainly reasonably calculated to provide the defendant with notice of a lawsuit when it is achieved through a forum in which the defendant conducts its business. *See id.* at *3, 9. Thus, the court held "that it is constitutionally permissible to authorize plaintiff to serve [defendant] by regular mail, fax and/or by e-mail" and granted the plaintiff's request to serve process by, among other methods, e-mail. *Id.* at *9.

Like in *Ryan*, here, Defendants are located in Nigeria, a country that is not bound by any international service agreements, and each Defendant conducts business online. [APP. 003–005, ¶¶ 8–10; APP. 019–23, Ex. E]. Specifically, Elephant Group PLC maintains a website at www.elephantgrp.com which directs parties to communicate with it via e-mail using info@elephantgrp.com, or through a forum that is available on their website at http://www.elephantgrp.com/?q=contact-us. [APP. 004–05, ¶ 10; APP. 019–23, Ex. E]. Elephant Group Limited is a subsidiary of Elephant Group PLC and the companies share a common physical address, as well as a Chairman in Alhaji Saidu M. Mohammed. [APP. 019–

23, Ex. E]. Based on *Ryan*, electronic service is reasonably calculated to inform Defendants of this action, consistent with international law, and permitted by Nigerian government.

It is for these reasons that Tango requests this Court's permission to attempt service through e-mail and Federal Express, as courts have deemed each method to be constitutional and consistent with international law.

### III.    PRAYER

Tango, therefore, is requesting the Court authorize Tango to serve the summons on Defendants by e-mail, as well as via Federal Express should the e-mail service fail.

Respectfully submitted,

*/s/ J. Stephen Simms*
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
Emily R. Steppick
emily.steppick@kellyhart.com
State Bar No. 24117095

J. Stephen Simms
(admitted *pro hac vice*)
jssimms@simmsshowers.com
Simms Showers LLP
201 International Circle, Suite 250
Baltimore, Maryland 21030
Telephone: (410) 783-5795
Facsimile: (410) 510-1789

**ATTORNEYS FOR TANGO
MARINE S.A.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on April 27, 2020, I filed the foregoing, accompanying affidavit and draft order on the Court's electronic filing system for service on all counsel of record.

*/s/ J. Stephen Simms*
J. Stephen Simms
